## BANKRUPTCY COURT FOR THE NORTHERN DISTRICT OF IOWA

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| Delta Co, LLC,[1] | ) | Case No. 23-00719 (TJC) |
| Debtor. | ) | (Joint Administration Requested) |

### Debtors' Motion for Entry of an Order (I) Authorizing the Debtors to (A) Continue to Operate Their Cash Management System, (B) Honor Certain Prepetition Obligations Related Thereto, and (C) Maintain Existing Business Forms and (II) Granting Related Relief

The above-captioned debtors and debtors in possession (collectively, the "Debtors") respectfully state the following in support of this motion (this "Motion").

### Relief Requested

1.     The Debtors seek entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Order"), (a) authorizing the Debtors to (i) continue to operate their cash management system, (ii) honor certain prepetition obligations related thereto, and (iii) maintain their existing business forms and (b) granting related relief.

### Jurisdiction and Venue

2.     The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the order of reference from the United States District Court for the Northern District of Iowa. The Debtors confirm their consent, pursuant to rule 7008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") to the entry of a final order by the Court in connection with this Motion to the extent that it is

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Delta Co, LLC (7102) and Integrated Insight Therapy, LLC (4080). The Debtors' service address is: 555 Meeker St, Delta, CO 81416.

later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3.     Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.     The bases for the relief requested herein are section 105(a) of the Bankruptcy Code and Bankruptcy Rules 1015(b) and 6003.

### Background

5.     The Debtors provide behavioral and mental health, medical, and substance use services to rural residences in Western Colorado, including residential and court ordered treatment programs and crisis services. The Debtors have thirteen locations, among which four are for residential treatment. The Debtors have just under 100 employees.

6.     On September 8, 2023 (the "Petition Date"), each of the Debtors filed a petition with the Court under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). The Debtors continue to operate their business and manage their properties as debtors and debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. The Debtors have requested procedural consolidation and joint administration of these chapter 11 cases pursuant to Bankruptcy Rule 1015(b). No party has requested the appointment of a trustee or examiner in these chapter 11 cases, and no committees have been appointed or designated.

## The Cash Management System

### I.    Overview

7.    In the ordinary course of business, the Debtors maintain a cash management system (the "Cash Management System") comparable to the cash management systems used by similarly situated companies to manage the cash of operating units in a cost-effective, efficient manner. The Debtors use the Cash Management System in the ordinary course of their business to collect, transfer, and disburse funds generated from their operations and to facilitate cash monitoring, forecasting, and reports. The Debtors maintain daily oversight over the Cash Management System and implements cash management controls for entering, processing, and releasing funds. The Debtors regularly reconciles the Debtors' books and records to ensure that all transfers are accounted for properly.

8.    Integrated Insight Therapy LLC ("IIT") maintains a deposit account (x5099) at U.S. Bank, N.A. ("U.S. Bank") that serves as the centralized master account for the Debtors' business (the "Main Concentration Account") and that provides funding to the other accounts in the Cash Management System. Funds from the Main Concentration Account have historically been transferred via wire or check to pay vendors and employees, settle claims, and satisfy ordinary course transactions. Additionally, the Main Concentration Account receives payments from health insurers, government programs, and grants.

9.    Within the Cash Management System, the Debtors also maintain: (a) one checking account (x4608) with U.S. Bank (the "U.S. Bank Legacy Account"), which receives payments from certain legacy obligations, (b) one deposit

account (x1235) with First Colorado National Bank, (c) one money market account (x1243) with First Colorado National Bank, and (d) are opening a segregated account with First Colorado National Bank that the Debtors propose will hold an adequate assurance deposit for the benefit of the Debtors' utility providers throughout the course of these chapter 11 cases (the "Adequate Assurance Account").[2]

## II.    Bank Accounts.

10.    As of the Petition Date, and including the Adequate Assurance Account, the Cash Management System is comprised of a total of five bank accounts (collectively, the "Bank Accounts"). The Bank Accounts reside at two different banks or financial institutions (collectively, the "Cash Management Banks"). Two of the Bank Accounts reside at U.S. Bank, and three Bank Accounts reside at First Colorado National Bank. The Bank Accounts are identified on **Exhibit 1** annexed to the Order attached hereto.

11.    The Debtors pay to the Cash Management Banks net services fees incurred in connection with the Bank Accounts (the "Bank Fees"). The Bank Fees are generally payable on a monthly basis and are roughly $150 per month. As of the Petition Date, the Debtors estimate that they do not owe any Bank Fees. The Debtors nonetheless seek authority to pay prepetition Bank Fees to the extent any ore outstanding as of the Petition Date and to continue paying Bank Fees in the ordinary course on a postpetition basis, consistent with past practice.

---

[2] Which will be funded as soon as practicable.

### III.    Business Forms and Books and Records.

12.    In the ordinary course of their business, the Debtors utilize a variety of preprinted correspondence and business forms, including letterhead, checks, and claim forms (the "Business Forms"). The Debtors also maintain books and records to document their financial results and a wide array of operating information (collectively the "Books and Records"). To minimize expenses to their estates and avoid confusion on the part of employees, clients, vendors, and suppliers during the pendency of these chapter 11 cases, the Debtors request that the Court authorize their continued use of their Business Forms and Books and Records to the limited extent that they are preprinted and in existence before the Petition Date, without reference to the Debtors' status as debtors in possession, rather than requiring the Debtors to incur the unnecessary expense and delay of ordering entirely new forms as required by the *Operating Guidelines and Reporting Requirements for Debtors in Possession and Trustees* (the "U.S. Trustee Guidelines"). If the Debtors exhaust their existing supply of checks during these chapter 11 cases, the Debtors will print or order checks with the designation "Debtor in Possession" and the corresponding bankruptcy case number.

### IV.    The Bank Accounts Substantially Coply with the U.S. Trustee Guidelines and Comply with the Deposit Guidelines of Section 345(b) of the Bankruptcy Code.

13.    The Office of the United States Trustee for the Northern District of Iowa (the "U.S. Trustee") does not appear to maintain a list of authorized depositories. To the extent that the Cash Management Banks are not authorized depositories, the

Debtors believe, based on their business relationships, that the Cash Management Banks are well-capitalized and financially stable institutions.

14.     Because the Debtors intend to keep each and any Bank Account below the applicable insurance coverage provided by the Federal Deposit Insurance Corporation or National Credit Union Association, and the Bank Accounts are so insured, the Bank Accounts comply with section 345(b) of the Bankruptcy Code.

15.     Therefore, the Debtors believe they can maintain the Bank Accounts without jeopardizing any parties in interest. The Debtors respectfully submit that cause exists to continue to allow the Debtors to continue utilizing their existing Bank Accounts.

## <u>Basis for Relief</u>

### I.     The Court Should Authorize the Debtors to Continue to Use the Cash Management System and Pay the Bank Fees.

16.     Debtors and debtors in possession are required to:  (a) close all existing bank accounts and open new debtor in possession accounts, (b) establish one debtor in possession bank account for all estate monies required for the payment of taxes, including payroll taxes; and (c) maintain a separate debtor in possession account for cash collateral. These requirements are intended to provide a clear line of demarcation between prepetition and postpetition transactions and operations and to prevent inadvertent payment of prepetition claims. *See* 28 U.S.C. § 586(a)(3); U.S. Trustee Guidelines.

17.     The continuation of the Cash Management System is nevertheless permitted because a debtor in possession is authorized to "use property of the estate

in the ordinary course of business without notice or a hearing." 11 U.S.C. § 363(c)(1).

Bankruptcy courts routinely treat requests for authority to continue utilizing existing

cash management systems as a relatively "simple matter[.]" *In re Baldwin-United*

*Corp.*, 79 B.R. 321, 327 (Bankr. S.D. Ohio 1987). In addition, in granting such relief,

courts recognize that an integrated cash management system "allows efficient

utilization of cash resources and recognizes the impracticalities of maintaining

separate cash accounts for the many different purposes that require cash." *In re*

*Columbia Gas Sys., Inc.*, 136 B.R. 930, 934 (Bankr. D. Del. 1992), *aff'd in relevant*

*part*, 997 F.2d 1039, 1061 (3d Cir. 1993). The requirement to maintain all accounts

separately "would be a huge administrative burden and economically inefficient."

*Columbia Gas*, 997 F.2d at 1061; *see also In re Southmark Corp.*, 49 F.3d 1111, 1114

(5th Cir. 1995) (stating that a cash management system allows a debtor "to administer

more efficiently and effectively its financial operations and assets").

18.    Here, requiring the Debtors to adopt a new, segmented cash

management system during these chapter 11 cases would be expensive, burdensome,

and unnecessarily disruptive to the Debtors' operations. Importantly, the Cash

Management system provides the Debtors with the ability to instantaneously track

and report the location and amount of funds, which, in turn, allows management to

track and control such funds, ensure cash availability, and reduce administrative

costs through a centralized method of coordinating the collection and movement of

funds. Any disruption of the Cash Management System could have a negative effect

on the Debtors' restructuring efforts. Indeed, absent the relief requested herein,

requiring the Debtors to adopt a new, segmented cash management system would needlessly reduce the value of the Debtors' business enterprise. By contract, maintaining the current Cash Management System will facilitate the Debtors' transition into chapter 11 by, among other things, minimizing delays in paying postpetition debts and eliminating administrative inefficiencies. Finally, maintaining the current Cash Management System will allow the Debtors' employees to focus on their daily responsibilities.

19.     Moreover, the Debtors respectfully submit that parties in interest will not be harmed by their maintenance of the Cash Management System, including maintenance of the Bank Accounts, because the Debtors have implemented appropriate mechanisms to ensure that unauthorized payments will not be made on account of obligations incurred before the Petition Date.

## II.    Authorizing the Debtors to Continue Using Debit, Wire, Credit Card, and ACH Payments is Warranted.

20.     The Debtors request that the Court grant further relief from the U.S. Trustee Guidelines to the extent such guidelines require the Debtors to make all disbursemetns by check. In particular, the U.S. Trustee Guidelines require that all receipts and all disbursements of estate funds must be made by check with a notation representing the reason for the disbursement. As discussed above, in the ordinary course of business, the Debtors conduct transactions through wires, ACH transactions, direct deposits, and other similar methods. If the Debtors' ability to conduct transactions by these methods is impaired, the Debtors may be unable to

perofmr under certain contracts, their business operations may be unnecessarily disrupted, and their estates will incur additional costs.

### III.   Authorizing the Banks to Continue to Maintain, Service, and Administer the Bank Accounts in the Ordinary Course of Business is Warranted.

21.   As discussed above, implementing the U.S. Trustee Guidelines would needlessly interrupt the Debtors' operations and impair the Debtors' efforts to preserve the value of their estates and restructure in an efficient manner. Thus, the Debtors respectfully request that the Court authorize the Cash Management Banks to continue to maintain, service, and administer the Bank Accounts as accounts of the Debtors as debtors in possession, without interruption, and in the ordinary course of business. In this regard, the banks should be authorized to receive, process, honor, and pay any and all checks, ACH transfers, and other instructions, and drafts payable through, drawn, or directed on such Bank Accounts after the Petition Date by holders, makers, or other parties entitled to issue instructions with respect thereto. Notwithstanding the foregoing, any check, draft, or other notification that the Debtors advise the banks to have been drawn, issued, or otherwise presented before the Petition Date may be honored by the banks only to the extent authorized by order of the Court.

22.   The Debtors further request that the Court authorize the Cash Management Banks to accept and honor all representations from the Debtors as to which checks, drafts, wires, or ACH transfers should be honored or dishonored consistent with any order of the Court and governing law, whether such checks, drafts, wires, or ACH transfers are dated before or subsequent to the Petition Date.

The Debtors also request that, to the extent a bank honor a prepetition check or other item drawn on any account either (a) at the direction of the Debtors, or (b) in a good-faith belief that the Court has authorized such prepetition check or item to be honored, such bank will not be deemed to be liable to the Debtors or to their estates on account of such prepetition check or other item honored postpetition. The Debtors respectfully submit that such relief is reasonable and appropriate because the banks are not in a position to independently verify or audit whether a particular item may be paid in accordance with a Court order or otherwise.

23.     Moreover, the Debtors request that the Court authorize the Cash Management Banks to (a) continue to charge the Debtors the Bank Fees, as applicable, and (b) charge back returned items to the Bank Accounts, whether such items are dated before, on, or subsequent to the Petition Date, in the ordinary course of business. The Debtors further request that the Court order that liens on any of the Bank Accounts granted to creditors will not have priority over the Bank Fees of the respective bank at which the Bank Account is located.

## IV.   The Requested Waivers Are Appropriate.

### A.   Cause Exists to Waive the U.S> Trustee Guidelines Regarding Authorized Depositories and Section 345(b) of the Bankruptcy Code.

24.     To the extent the Cash Management System does not strictly comply with the U.S. Trustee Guidelines and section 345 of the Bankrutpcy Code, the Debtors seek a waiver of the deposit requirements set forth therein and the U.S. Trustee Guidelines.

25.     The deposit or investment of money of estates, such as cash, is authorized as "will yield the maximum reasonable net return on such money, taking into account the safety of such deposit or investment." 11 U.S.C. § 345(a). For deposits that are not "insured or guaranteed by the United States or by a department, agency or instrumentality of the United States or backed by the full faith and credit of the United States," the estate much require from the entity with which the money is deposited or invested a bond in favor of the United States secured by the undertaking of a corporate security, "unless the court for cause orders otherwise." 11 U.S.C. § 345(b).

26.     Courts may waive compliance with section 345 of the Bankruptcy Code and the U.S. Trustee Guidelines for "cause." In evaluating whether "cause" exists, courts have considered a number of factors, such as:  (a) the sophistication of the debtor's business; (b) the size of the debtor's business operations; (c) the amount of the investments involved; (d) the bank rating (Moody's and Standard & Poor) of the financial institution where the debtor in possession funds are held; (e) the complexity of the case; (f) the safeguards in place within the debtor's own business for ensuring the safety of the funds; (g) the debtor's ability to reorganize in the face of a failure of one or more of the financial institutions; (h) the benefit to the debtor; (i) the harm, if any, to the estate; and (j) the reasonableness of the debtor's request for relief from the requirements of section 345(b) of the Bankruptcy Code in light of the overall circumstances of the case. *See In re Serv. Merch. Co., Inc.*, 240 B.R. 894, 896 (Bankr. M.D. Tenn. 1999).

27.     Here, "cause" exists to waive compliance with section 345 of the Bankrutpcy Code and the U.S. Trustee Guidelines with respect to the Bank Accounts because (a) U.S. Bank is a highly rated, reputable bank that is subject to supervision by national banking regulators; (b) First Colorado Bank is a highly rated, reputable bank that is subject to supervision by banking regulators for the state of Colorado; (c) the Debtors have internal safeguards in place to ensure the safety of the funds and also retain the right to close the Bank Accounts and establish new bank accounts as needed; and (d) requiring the Debtors to transfer the limited funds in the Bank Accounts to a designated authorized depository would place a needless administrative burden on the Debtors that would unnecessarily divert the attention of the Debtors' management away from the critical safing process and the evaluation of value-maximizing transactions. On balance, the benefits of a waiver would far outweigh any potential harm to the estates from noncompliance with section 345(b) of the Bankruptcy Code.

## B.     The Court Should Authorize the Debtors to Continue Using the Business Forms.

28.     To avoid disruption of the Cash Management System and unnecessary expense, the Debtors request that they be authorized to continue to use the Business Forms substantially in the form existing immediately before the Petition Date, to the limited extent they are preprinted and in existence before the Petition Date, without refercne to their status as debtors in possession. The Debtors submit that parties in interest will not be prejudiced by this relief. Parties doing business with the Debtors

undoubtedly will be aware of their status as debtors in possession and, thus, changing business forms is unnecessary and would be unduly burdensome.

### The Requirements of Bankruptcy Rule 6003 Are Satisfied

29.     Bankruptcy Rule 6003 empowers a court to grant relief within the first 21 days after the commencement of a chapter 11 case "to the extent that relief is necessary to avoid immediate and irreparable harm." As described above, the relief requested is necessary to avoid the immediate and irreparable harm that would result from standstill of the Debtors' Cash Management System. Failure to receive such authorization and other relief during the first 21 days of these chapter 11 cases would severely disrupt the Debtors' operations at this critical juncture. Accordingly, the Debtors submit that they have satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 to support granting the relief requested herein.

### Waiver of Bankruptcy Rule 6004(a) and 6004(h)

30.     To implement the foregoing successfully, the Debtors seek a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the 14-day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h).

### Reservation of Rights

31.     Nothing contained herein is intended or shall be construed as:  (a) an admission as to the validity of any prepetition claim against a Debtor entity; (b) a waiver of the Debtors' or any other party in interest's rights to dispute any prepetition claim on any grounds; (c) a promise or requirement to pay a prepetition claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Motion or any order granting the relief requested by this Motion; (e) a request or

authorization to assume any prepetition agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; or (f) a waiver of the Debtors' or any other party in interest's rights under the Bankruptcy Code or any other applicable law.

### Notice

32.     The Debtors will provide notice of this Motion to:  (a) the U.S. Trustee, (b) the holders of the 20 largest unsecured claims against the Debtors (on a consolidated basis); (c) all parties known by the Debtors to hold or assert a lien on any asset of the Debtor; (d) all relevant state taxing authorities, (e) the Internal Revenue Service, (f) all of the Debtors' landlords, and owners or operators of premises at which any of the Debtors' inventory or equipment is located; (g) Intuit, Inc.; and (h) any party that has requested notice pursuant to Bankruptcy Rule 2002. The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

### No Prior Request

33.     No prior motion for the relief requested herein has been made to this or any other court.

[*Remainder of Page Intentionally Left Blank; Prayer for Relief Follows*]

WHEREFORE the Debtors respectfully request that the Court enter the Order, granting the relief requested herein and such other relief as the Court deems appropriate under the circumstances.

Respectfully submitted,

AEGIS Law,

*Eric J Langston*

Eric J. Langston, AT0014001
Mailing:  601 S. Lindbergh Blvd.
              Frontenac, MO 63131
Physical: 222 Third Ave. SE
              Suite 501, Office 6
              Cedar Rapids, IA 52401
(319) 435-9793, Fax: (314) 454-9110
elangston@aegislaw.com
              *Attorney for Debtors*

**Exhibit A**

**Proposed Order**

BANKRUPTCY COURT FOR THE NORTHERN DISTRICT OF IOWA

| In re: | ) | Chapter 11 |
|---|---|---|
| Delta Co, LLC,[3] | ) | Case No. 23-00719 (TJC) |
| Debtor. | ) | |

### Order (I) Authorizing the Debtors to
### (A) Continue to Operate Their Cash Management System,
### (B) Honor Certain Prepetition Obligations Related Thereto, and
### (C) Maintain Existing Business Forms and (II) Granting Related Relief

Upon the motion (the "Motion") of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of an order (this "Order"), (a) authorizing the Debtors to (i) continue to operate their Cash Management System (ii) pay any prepetition or postpetition amounts outstanding on account of the Bank Fees; and (iii) maintain existing Business Forms in the ordinary course of business, and (b) granting related relief, all as more fully set forth in the Motion; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the order of reference; and that this Court may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion; and this Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and upon all of the

---

[3] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Delta Co, LLC (7102) and Integrated Insight Therapy, LLC (4080). The Debtors' service address is: 555 Meeker St, Delta, CO 81416.

proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1.      The Motion is granted as set forth herein.

2.      The Debtors are authorized to continue operating the Cash Management System, honor their prepetition obligations related thereto, and maintain existing Business Forms.

3.      The Debtors are further authorized to:  (a) continue to use, with the same account numbers, the Bank Accounts, as summarized in Exhibit 1 attached hereto, in existence as of the Petition Date without the need to comply with certain guidelines relating to bank accounts set forth in the U.S. Trustee Guidelines; (b) use, in their present form, all preprinted correspondence and Business Forms (including letterhead) without reference to the Debtors' status as debtors in possession; (c) treat the Bank Accounts for all purposes as accounts of the Debtors as debtors in possession; (d) deposit funds in and withdraw funds from the Bank Accounts by all usual means, including checks, wire transfers, and other debits; and (e) pay the Bank Fees, including any prepetition amounts and any ordinary course Bank Fees incurred in connection with the Bank Accounts and to otherwise perform their obligations under the documents governing the Bank Accounts.

4.      The Cash Management Banks are authorized to continue to maintain, service, and administer the Bank Accounts as accounts fo the Debtors as debtors in possession, without interruption and in the ordinary course, and to receive, process, honor, and pay, to the extent of available funds, any and all checks, drafts, wires,

credit card payments, and ACH transfers issued and drawn on the Bank Accounts after the Petition Date by the holders or makers thereof, as the case may be.

5.     Subject to applicable bankruptcy or other law, those certain existing deposit agreements between the Debtors and the Cash Management Banks shall continue to govern the postpetition cash management relationship between the Debtors and the Cash Management Banks, and all of the provisions of such agreements, including the termination and fee provisions, shall remain in full force and effect.

6.     The Debtors and the Cash Management Banks may, without further order of this Court, agree to and implement changes to the Cash Management System and procedures related thereto in the ordinary course of business, including the closing of Bank Accounts or the opening of new bank accounts.

7.     The relief granted in this Order is extended to any new bank account opened by the Debtors in the ordinary course of business after the date hereof, which account shall be deemed a Bank Account, and to the bank at which such account is opened, which bank shall be deemed a Cash Management Bank.

8.     All banks maintaining any of the Bank Accounts that are provided with notice of this Order shall not honor or pay any bank payments drawn on the listed Bank Accounts or otherwise issued before the Petition Date for which the Debtors specifically issue stop payment orders in accordance with the documents governing such Bank Accounts.

9.      The Cash Management Banks are authorized, without further order of this Court, to deduct all applicable fees from the applicable Bank Accounts consistent with historical practice.

10.      Subject to the terms set forth herein, any bank, including the Cash Management Banks, may rely upon the representations of the Debtors with respect to whether any check, draft, wire, or other transfer drawn or issued by the Debtors prior to the Petition Date should be honored pursuant to any order of this Court, and no bank that honors a prepetition check or other item drawn on any account that is the subjection of this Order (a) at the direction of the Debtors or (b) in a good-faith belief that this Court has authorized such prepetition check or item to be honored shall be deemed to be nor shall be liable to the Debtors or their estates on account of such prepetition check or other item being honored postpetition, or otherwise deemed to be in violation of this Order.

11.      Any banks, including the Cash Management Banks, are further authorized to honor the Debtors' directions with respect to the opening and closing of any Bank Account and accept and hold, or invest, the Debtors' funds in accordance with the Debtors' instructions; *provided* that the Cash Management Banks shall not have any liability to any party for relying on such representations to the extent such reliance otherwise complies with applicable law.

12.      The Debtors are authorized, in the ordinary course of business, to open any new bank accounts or close any existing Bank Accounts and enter into any

ancillary agreements, including new deposit account control agreements, related to the foregoing, as they may deem necessary and appropriate.

13.     To the extent that the Cash Management Banks are not authorized depositories designated by the U.S. Trustee pursuant to the U.S. Trustee Guidelines or are not compliant with section 345 of the Bankruptcy Code, such deficiencies are waived.

14.     For banks at which the Debtors hold bank accounts that are party to a Uniform Depository agreement with the Office of the U.S. Trustee, within fifteen (15) days of the date of entry of this Order, the Debtors shall (a) contact each bank, (b) provide the bank with each of the Debtors' employer identification numbers, and (c) identify each of their bank accounts held at such banks as being held by a debtor in possession in a bankruptcy case.

15.     For banks at which the Debtors hold accounts that are not party to a Uniform Depository agreement with the Office of the U.S. Trustee, the Debtors shall use their good-faith efforts to cause the banks to execute a Uniform Depository agreement in a form prescribed by the Office of the U.S. Trustee within forty-five (45) days of the date of this Order. The U.S. Trustee's rights to seek further relief from this Court on notice in the event that the aforementioned banks are unwilling to execute a Uniform Depository Agreement in a form prescribed by the Office of the U.S. Trustee are fully reserved.

16.     Nothing contained in the Motion or this Order shall be construed to (a) create or perfect, in favor of any person or entity, any interest in cash of a Debtor

that did not exist as of the Petition Date or (b) alter or impair any security interest

or perfection thereof, in favor of any person or entity, that existed as of the Petition

Date.

17.     For the avoidance of doubt, the Debtors are authorized to continue using

the credit cards used by the Debtors' employees for Employee Purchases in the

ordinary course of business and consistent with prepetition practices.

18.     Notwithstanding the relief granted in this Order and any actions taken

pursuant to such relief, nothing in this Order shall be deemed:  (a) an admission as

to the validity of any prepetition claim against a Debtor entity; (b) a waiver of the

Debtors' or any other party in interest's rights to dispute any prepetition claim on

any grounds; (c) a promise or requirement to pay a prepetition claim; (d) an

implication or admission that any particular claim is of a type specified or defined in

this Motion or any order granting the relief requested by this Motion; (e) a request or

authorization to assume any prepetition agreement, contract, or lease pursuant to

section 365 of the Bankruptcy Code; or (f) a waiver of the Debtors' or any other party

in interest's rights under the Bankruptcy Code or any other applicable law.

19.     The banks and financial institutions on which checks were drawn or

electronic payment requests made in payment of the prepetition obligations approved

herein are authorized to receive, process, honor, and pay all such checks and

electronic payment requests when presented for payment, and all such banks and

financial institutions are authorized to rely on the Debtors' designation of any

particular check or electronic payment request as approved by this Order.

20.     The contents of the Motion satisfy the requirements of Bankrutpcy Rule 6003(b).

21.     Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion.

22.     Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Order are immediately effective and enforceable upon its entry.

23.     The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Order in accordance with the Motion.

24.     This Court retains exclusive jurisdiction with respect to all matters arising from or related ot the implementation, interpretation, and enforcement of this Order.

Dated: _____, 2023

_____
United States Bankruptcy Judge

**Exhibit 1**

**Cash Management System and Bank Accounts**

| | Debtor | Bank Name | Last 4 Digits of Account No. | Account Type | Est. Amount as of Petition Date |
|---|---|---|---|---|---|
| **Cash Management System Accounts** | | | | | |
| 1. | Integrated Insight Therapy, LLC | U.S. Bank | 5099 | Main Concentration Account | |
| 2. | Integrated Insight Therapy, LLC | U.S. Bank | 4608 | Checking Account | |
| 3. | Integrated Insight Therapy, LLC | First Colorado National Bank | 1235 | Checking Account | |
| 4. | Integrated Insight Therapy, LLC | First Colorado National Bank | 1243 | Money Market | |
| 5. | Integrated Insight Therapy, LLC | First Colorado National Bank | [TBD] | | |